The Law Firm of Jacobson & Rooks, LLC
Jared A. Jacobson, Esq. (Attorney I.D. No. 201382)
450 N. Narberth Ave., Suite 102
Narberth, PA 19072
(215) 874-8808 (phone) / (609) 543-2600 (fax)
jjacobson@jacobsonrooks.com (e-mail)               Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CECIL MOSENSON | No. _____ |
| Plaintiff, | |
| v. | |
| CELEBRITY HOME ENTERTAINMENT, INC., | Jury Trial Demanded |
| and | |
| EYE FILM RELEASING, INC., | |
| and | |
| ROBERT FEINSTEIN | |
| Defendant. | |

**COMPLAINT**

I.   **INTRODUCTION**

   1.   This action for equitable, monetary, and other relief is brought by Plaintiff Cecil Mosenson, to redress intentional violations by Defendants Robert Feinstein, ("Defendant Feinstein"), Celebrity Home Entertainment, Inc., and Eye Film Releasing, Inc. (each a "Defendant" and collectively, the "Company" or "Defendants") of rights secured

1

by the laws of the United States and the statutory and common law of the Commonwealth of Pennsylvania.

## II. JURISDICTION

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because there is a complete diversity of citizenship between Plaintiff and Defendants and because the amount in controversy exceeds $75,000, exclusive of interest, fees, and costs.

3. The formation and later the performance of the contract at issue herein occurred, in part, in the Eastern District of Pennsylvania, and that is where one of the parties (the Plaintiff) has his principal residence.

4. The Defendants' tortious conduct complained of herein occurred in part in this District and in part in other areas of the country, including California.

5. The Defendants' regularly conduct business in Pennsylvania in connection with the conduct at issue herein and otherwise.

6. State law claims are before this Honorable Court pursuant to 28 U.S.C. §1367, supplemental jurisdiction.

## III. VENUE

7. Actions complained of herein took place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania as the place in which the claims arose, and the place where Defendant conducts business.

8. Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. §1391(a).

## IV. PARTIES

9. Plaintiff, Cecil Mosenson ("Plaintiff" or "Mr. Mosenson" or "Coach" or "Coach Mosenson") is an adult male who currently resides at 777 West Germantown Pike, Apt. 801, Plymouth Meeting, PA 19462.

10. Defendant, Celebrity Home Entertainment, Inc. is a California Corporation with a registered office address at 6380 Wilshire Blvd., Suite 1115, Los Angeles, CA 90048.

11. Defendant, Eye Film Releasing, Inc. is a California Corporation with a registered office address at 468 North Camden Drive, Beverly Hills, CA 90210.

12. Upon information and belief, Defendant Robert Feinstein is the President and Founder of both Celebrity Home Entertainment, Inc. and Eye Film Releasing, Inc., and resides at 468 North Camden Drive, Beverly Hills, CA 90210.

## V. NATURE OF THE ACTION

13. This is an action for breach of contract, fraud, conversion, and unjust enrichment in connection with Defendant Celebrity Home Entertainment, Inc., Defendant Eye Film Releasing, Inc., and Defendant Feinstein repeatedly, over a period of at least approximately four (4) years. Over such period, Defendants defrauded Plaintiff out of his entitlement to various proceeds from the exploitation of a one-of-a-kind historic basketball film belonging to Plaintiff and furthermore, took physical possession of and failed to return Plaintiff's personal, one of a kind recordings of arguably the greatest player ever in basketball history in Wilt Chamberlin. Plaintiff's property was exploited and then eventually sold to various digital platform companies. Defendants systematically misled Plaintiff's connection with such exploitations and, despite repeated demands, and despite

3

promises to do so, have failed to pay Plaintiff his share of the exploitation proceeds. This is an action to recover Plaintiff's share of those monies, the original recordings entrusted to Defendants, together with other recoverable damages, and relief, including an accounting, a constructive trust, punitive damages, interest, costs, and such other relief as may be appropriate under the circumstances.

## VI. STATEMENT OF THE FACTS

14. Plaintiff Cecil Mosenson coached high school basketball for 34 years at four schools, won 325 games, was cited for running an exemplary (he was a principal at a suburban junior high school) program by former President Ronald Reagan, and coached the Maccabi USA under-16 team to a gold medal in 1999.

15. When Mosenson was twenty two years old, he was hired to coach at Overbrook High School, where he inherited future NBA Champion Wilt Chamberlain. Mosenson later authored the book, "It All began With Wilt."

16. On November 28, 2011, the United States Copyright office registered Cecil Mosenson's claim to Copyright and issued certificate(s) of registration for Mr. Mosenson's audio-visual work about Wilt Chamberlain titled "The Greatest Player Ever" (the "Property") under Registration Number Pau 3-638-449. The Film contained the text and narration of basketball game(s) featuring basketball player, Wilt Chamberlain.

17. As identified on the cover of The Greatest Player Ever, the film "takes the viewer through a career that that starts with the high school championship being played at the Philadelphia Palestra against West Catholic High School in 1954. It displays even then the outstanding skills of Wilt Chamberlain who goes on to be the most outstanding

4

basketball player in the world. Interviews by (Mosenson) and visuals throughout his career make the DVD the most informative narrative of his character and professional career. His 100 point game against the New York Knickerbockers still stands as the most outstanding achievement of any athlete. Interviews of opposing players describe his amazing talent and marvelous athletic abilities that sometimes seemed unbelievable.

18. Defendant Celebrity Home Entertainment, Inc. has been in the business of television and video tape distribution since 2008, with expertise in international and domestic marketplaces working with digital platform partners and film producers.

19. Defendant Eye Film Releasing, Inc. has been in the business of digital, VOD, and TV distribution since 2013, with expertise in international and domestic marketplaces working with digital platform partners and film producers.

20. Feinstein, the President of both Celebrity Home Entertainment, Inc. and Eye Film Releasing, Inc., has been in the video business since the 1980's, has built rental stores chains in the United States and Japan, has been considered a leading figure in the home video business, and has provided customers with DVDs, CDs, and licensed exclusive content from independent filmmakers for DVD, TV, and theatrical distribution.

21. To commercially benefit and exploit Coach Mosenson's film, The Greatest Player Ever, Coach Mosenson and Celebrity Home Entertainment, Inc. entered into a contract on December 20, 2011, by which, *inter alia*, Coach Mosenson agreed to grant Celebrity Home Entertainment, Inc. and to turn over to it the exclusive and irrevocable right to commercially exploit The Greatest Player Ever, and Celebrity Home Entertainment, Inc. agreed to pay Coach Mosenson a share of whatever net revenues were

5

realized upon any and all exploitations. (Such agreement is hereinafter referred to as the "Distribution Agreement," and is attached hereto and incorporated herein by reference as Exhibit "A.")

22. Disposition of Receipts were defined in the Distribution Agreement to mean gross revenues minus a Distribution Fee of fifty-percent (50%), Reserve for Returns, and funds advanced for the benefit of the Property including usual and customary mark-ups.

23. Celebrity Home Entertainment in turn agreed to commercially exploit The Greatest Player Ever for the highest possible price.

24. Celebrity Home Entertainment, upon information and belief, completed transactions from 2011 - 2015 with companies including, but not limited to, HULU (via association with Orchard Enterprises), Amazon, BigStar TV, Wax Works, Super D, iTunes, Vudu, Google Play, by which The Greatest Player Ever was exploited in exchange for financial gain.

25. Upon information and belief, Celebrity Home Entertainment, Inc., relied in part on the services and staff of Defendant Feinstein's other company, Eye Film Releasing, Inc. in the furtherance of Celebrity Home Entertainment, Inc.'s aforementioned Agreement with Coach Mosenson.

26. Upon information and belief, Celebrity Home Entertainment, Inc. actively concealed from Coach Mosenson the nature of the several transactions with its digital platform partners, the compensations paid in connection with such transactions, the timing of when such compensations were actually or were to be paid, and the written

6

agreement(s) memorializing such transactions, despite repeated requests for such information by Mosenson.

27. On several occasions between 2012 – present, Coach Mosenson requested information from Defendants pertaining to the financial transactions concerning The Greatest Player Ever, in which his requests were either ignored altogether or were vaguely addressed and without legitimate substantiation.

28. Pursuant to the express terms of the Distribution Agreement, Celebrity Home Entertainment, Inc. was under an obligation to render to Mosenson a quarterly "statement of account" detailing the exploitation of The Greatest Player Ever and the receipt of all compensations, which Celebrity Home Entertainment, Inc. had failed to do (Coach Mosenson was only provided seven quarterly statements since December, 2011, many of which were only at his insistence).

29. When Coach Mosenson was eventually provided, in an untimely manner, with information concerning financial transactions associated with The Greatest Player Ever by Defendants, he was only provided vague and unsubstantiated figures concerning sales and balances in Mosenson's Reserve for Refund account. Such figures lacked relevant dates for transactions, where such transactions had originated, parties to such transactions, etc.

30. For example, the quarterly refund listed on the quarterly statements never identified the actual amount that was refunded each quarter, nor contained any explanation as to the basis behind Defendants' claims that there was not enough in Coach Mosenson's Reserve for Refund balance to produce a profit for Coach Mosenson.

31. When Coach Mosenson questioned Defendants about transaction(s) regarding Hulu's use of The Greatest Player Ever since 2012, Defendant Feinstein stated that he lacked information regarding such transaction(s), including who had authorized the use of Coach Mosenson's Property.

32. On April 22, 2015, Defendant Feinstein later confirmed, only after being questioned by Coach Mosenson, that his film was being sold by Hulu via association with The Orchard Company.

33. Notwithstanding Feinstein's statement to Coach Mosenson that he would ask his bookkeeper to double check to be sure that Mosenson had been receiving credit for income received from Hulu revenues and have such information relayed to Mosenson, such information was never properly relayed.

34. Defendants have together conspired to (1) deprive Mosenson of the information and facts about the Hulu transaction (among other transactions), from which Mosenson could properly determine his financial rights, (2) mislead Mosenson about the amount of compensation he was due, in an effort to (3) deprive Mosenson from receiving his share of the considerations under the Distribution Agreement from the such transaction(s).

35. Celebrity Home Entertainment, Inc. is, upon information and belief, a privately held corporation with few if any employees, whose assets have largely been stripped out by Feinstein or by those under his control or to whom he is related, and which has essentially been used by Feinstein as his personal asset.

8

36. Upon information and belief, Feinstein is the dominant shareholder, director, and officer of both Celebrity Home Entertainment, Inc. and Eye Film Releasing, Inc., and controls all of Celebrity Home Entertainment, Inc.'s and Eye Film Releasing, Inc.'s conduct and financial dealings. As such, and for other reasons, Feinstein is the alter ego of such companies.

37. Mosenson has at all times performed all of his obligations under the Distribution Agreement.

38. Defendants have engaged in a scheme to defraud Mosenson out of his entitlement to proceeds from various transactions concerning the exploitation of Mosenson's basketball films.

39. Upon information and belief, many companies in which Defendants contracted with for sales of The Greatest Player Ever were never identified to Coach Mosenson.

40. As set forth above, in 2011 Mosenson entered into a contractual relationship with Celebrity Home Entertainment, Inc.--the Distribution Agreement--pursuant to which Mosenson entrusted his basketball films and video library (ultimately comprising The Greatest Player Ever) to Celebrity Home Entertainment, Inc. and its employees, including Feinstein, who, in turn, were obligated to "exploit" the videos and films and share all of the net revenues with Mosenson.

41. Although the Distribution Agreement has been in effect for approximately four years, Mosenson has not received any payments for the exploitation of The Greatest Player Ever.

42. Upon information and belief, Feinstein and other employees or agents of Celebrity Home Entertainment, Inc. licensed and distributed The Greatest Player Ever through the United States Mail to third party licensees (The Orchard, Amazon, iTunes, Vudu, Google Play, Hulu), accepted payment for same through interstate wire transfers, and intentionally failed to pay Mosenson its share of the proceeds from each transaction, while knowing they were obligated to do so.

43. Under the Distribution Agreement, Mosenson was owed a portion of the proceeds from such transaction(s) and Defendants knew that Mosenson was owed money.

44. Despite Feinstein and other employees' knowledge of Mosenson's entitlement, they concealed the transaction from Mosenson and knowingly failed to pay money owed to Mosenson.

45. Currently, Celebrity Home Entertainment, Inc., a dissolved Corporation, has virtually no assets as a result of Feinstein and other employees or agents of Celebrity Home Entertainment, Inc. successfully siphoning all of its assets to Feinstein and other individuals, all of which was done in an effort to further the overall scheme to defraud Mosenson and prevent it from obtaining the monies it is rightfully owed. These acts were all done, upon information and belief, by utilizing the interstate wire system and/or the U.S. mail.

46. Mosenson was encouraged by Defendants' representations as to sales potential and arrangements with companies selling The Greatest Player Ever, and did in fact rely on their statements and misrepresentations.

47. Though Celebrity Home Entertainment, Inc. and Feinstein have claimed that Coach Mosenson has not received a net profit from the Distribution Agreement, it is believed Mosenson is due substantial on-going royalty payments.

48. In furtherance of the Distribution Agreement, Plaintiff Mosenson gave sole possession of the following videotapes and/or films to Celebrity Home Entertainment Inc. via FedEx, on May 18, 2013:

    a. Wilt's Story – Overbrook v. Farrell

    b. Wilt in High School (Action Sports)

    c. Overbrook v. West Catholic, 1954

    d. Personal Interview with Cecil Mosenson, 1970 (NBA Productions)

    e. Overbrook v. Farrell, 1954

    f. Basketball in the Fifties, 1953 (CBS)

    g. Basketball Practice, 1954 (HULU)

    h. Will at Kutsher's, 1956 (CBS)

    i. Harlem Globetrotters with Wilt, 1958 (Clear Channel)

    j. 100 Point Game at Hershey Arena, 1962 (CBS)

    k. 100 Point Game At Hershey Arena, 1962 (HULU)

    l. Coach Mosenson Visiting Overbrook High School, 1970 (CNN)

    m. Coach Mosenson Interviewed by Comcast, 2009 (Comcast)

49. When Mosenson has repeatedly inquired about the return of the aforementioned videotapes and CDs that Mosenson furnished to Celebrity Home

Entertainment on May 18, 2013, Defendant Feinstein falsely stated that such items were returned to Mosenson..

50. Defendant Feinstein never provided any proof that the items were returned to Mosenson. To this day, Mosenson has still not received his videotapes and CDs back from Defendants.

## VII. RELIEF REQUESTED

### COUNT I
### (Breach of Contract)

51. All other paragraphs in this Complaint are hereby incorporated by reference as if fully set forth herein at length.

52. Pursuant to the terms of Distribution Agreement, Celebrity Home Entertainment, Inc. entered into a transaction with Coach Mosenson for the sale and exploitation of The Greatest Player Ever.

53. In addition, pursuant to the terms of the Distribution Agreement, Celebrity Home Entertainment, Inc. entered into various transactions with other third-parties, as identified above, for the sale and exploitation of The Greatest Player Ever.

54. Despite the contractual obligation to do so, Celebrity Home Entertainment, Inc. and Feinstein refused to pay the money owed Mosenson pursuant to the Distribution Agreement.

55. As detailed above, Feinstein utilized Celebrity Home Entertainment, Inc., Inc. as his alter-ego, stripped the company from virtually all of its assets for his own personal benefit, thereby leaving the corporation severely undercapitalized and incapable of satisfying its debts, specifically those debts owed to Mosenson.

56. To avoid this injustice, the corporate veil of Celebrity Home Entertainment, Inc. should be pierced and Feinstein should be personally liable for any contractual debt owed to Mosenson.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant Celebrity Home Entertainment, Inc., and Robert Feinstein for compensatory damages in an amount in excess of the arbitration limits and to be determined from the evidence to fully compensate Mosenson those monies he is due under the Distribution Agreement, together with interest, costs, and such other relief as the Court deems just.

## COUNT II
### (Conversion)

57. All other paragraphs in this Complaint are hereby incorporated by reference as if fully set forth herein at length.

58. Celebrity Home Entertainment, Inc., Eye Film Releasing, Inc., and Feinstein have exercised exclusive dominion and control over Mosenson's videotapes and CD's (described above) to the deprivation of Mosenson.

59. Celebrity Home Entertainment, Inc. and Feinstein have no lawful justification for withholding the control and possession over the videotapes and CD's from Mosenson.

60. Celebrity Home Entertainment, Inc., Eye Film Releasing, Inc., and Feinstein have undertaken their course of conduct to deprive Mosenson of the videotapes and CD's Mosenson is due in order to enrich themselves at Mosenson's expense.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants Feinstein, Celebrity Home Entertainment, Inc., Eye Film Releasing, Inc., jointly and severally for such damages in an excess of the arbitration limits as will properly and fully make Plaintiff whole based upon the evidence, together with an award of attorney's fees, costs, punitive damages, interest, and such other relief as the Court deems just.

### COUNT III
### (Unjust Enrichment)

61. All other paragraphs in this Complaint are hereby incorporated by reference as if fully set forth herein at length.

62. The funds and accoutrements attributable to and belonging to Mosenson pursuant to the terms of the Distribution Agreement are unjustly enriching the Defendants.

63. Without an order of the Court requiring the turnover of such funds and accouterments to Plaintiff, Defendants will be permanently unjustly enriched thereby.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants Feinstein, Celebrity Home Entertainment, Inc., and Eye Film Releasing, Inc., (and any John and Jane Doe or Doe Entity depending upon the evidence) jointly and severally for such damages in excess of the arbitration limits as will properly and fully make Plaintiff whole based upon the evidence, together with an award of attorney's fees, costs, punitive damages, interest, and such other relief as the Court deems just.

## COUNT IV
### (Fraudulent Concealment)

64. All other paragraphs in this Complaint are hereby incorporated by reference as if fully set forth herein at length.

65. Defendants' conduct has been specifically and intentionally designed to mislead, defraud, and cheat Plaintiff out of its portion of the considerations received from the exploitation of The Greatest Player Ever.

66. Further, Defendants have employed a campaign of misleading statements and deceptive acts designed to lull Plaintiff into a state of inaction in a false belief that Defendants were acting honorably and lawfully, when in fact they were not.

67. Defendants have used the interstate mails and wires to assist them in effectuating the frauds perpetrated by them.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants Feinstein, Celebrity Home Entertainment, Inc., and Eye Film Releasing, Inc., (and any John and Jane Doe or Doe Entity depending upon the evidence) jointly and severally for such damages in excess of the arbitration limits as will properly and fully make Plaintiff whole based upon the evidence, together with an award of attorney's fees, costs, punitive damages, interest, and such other relief as the Court deems just.

## COUNT V
### (Civil Conspiracy)

68. All other paragraphs in this Complaint are hereby incorporated by reference as if fully set forth herein at length.

69. Defendants themselves, and perhaps also with various John and Jane Does and Doe Entities, have combined to commit overt acts in furtherance of the fraud, conversion, and deception of Plaintiff as detailed herein.

70. Such conduct has included various agreements between Defendants to commit overt acts as part of or affecting interstate commerce with the sole purpose of furthering the goals of the conspiracy.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants Feinstein, Celebrity Home Entertainment, Inc., and Eye Film Releasing, Inc., (and any John and Jane Doe or Doe Entity depending upon the evidence) jointly and severally for such damages in excess of the arbitration limits as will properly and fully make Plaintiff whole based upon the evidence, together with an award of attorney's fees, costs, punitive damages, interest, and such other relief as the Court deems just.

## COUNT VI
### (Declaratory Judgment)

71. All other paragraphs in this Complaint are hereby incorporated by reference as if fully set forth herein at length.

72. Mosenson has pursuant to the terms of the Distribution Agreement an interest in and entitlement to a portion of any and all ongoing or future compensations, royalties, of license fees, as well as the right to receive from Defendants a quarterly accounting of the same.

WHEREFORE, Plaintiff respectfully requests a judicial declaration and other appropriate relief pursuant to 28 U.S.C. §2201, et. seq. of the existence and enforceability